[Crim. No. 10589. Fourth Dist., Div. Two. June 11, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY LEE BROWN, Defendant and Appellant.

COUNSEL

John F. M. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Richard Lennon, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, A. Wells Petersen and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THE COURT.*—Defendant pleaded guilty to two counts of second degree burglary. Probation was granted which included service of county jail time. Approximately two years later in March 1979, defendant's probation was revoked and he was committed to the California Youth Authority for 2 years and 8 months with 340 days' credit for county jail time.

Sometime around March 1, 1978, defendant was arrested and jailed in Los Angeles County for a burglary committed in that county. Defendant was then on probation in the instant San Bernardino case.

The record before us demonstrates that both on March 28 and March 31, 1978, different judges of the San Bernardino Superior Court recalled bench warrants and dismissed probation revocation petitions as to defendant. There is no further information in the record concerning this matter. We understand that defendant was in jail in Los Angeles County at that time awaiting disposition of the charges pending in that jurisdiction.

It was stated by defendant's counsel at the probation revocation hearing herein that during the time defendant was in Los Angeles custody there was a San Bernardino "hold" placed on him. There is nothing in the appeal record concerning this matter.

In latter August of 1978 defendant pleaded guilty in Los Angeles and was placed on probation. One term of that probation was service of one year county jail time. Upon completion of that probationary term in Los Angeles, defendant was transported to San Bernardino and his probation revoked in this case.

Revocation herein was predicated on defendant's violation of four terms of his probationary grant due to his violation of law [the Los Angeles burglary], his failure to keep scheduled appointments with his probation officer [which may have included moving from San Bernardino County to Los Angeles County without notifying his probation officer], his failure to make any of his restitution payments to his victims [$821 at $35 per month], and his failure to pay *any* portion of his fine [$220 at $10 per month]. There is no challenge to any aspect of the

---

*Before Gardner, P. J., Morris, J., and McDaniel, J.

probation revocation on this appeal. The sole issue is one of the amount of presentence credit to which defendant is entitled.

At his sentencing defendant's counsel requested that the court "consider" the time spent in Los Angeles custody "because he was on hold here and was ineligible for bail." There was no specific request for credit and no further mention of the matter. Credit for time spent in Los Angeles custody was not given.

On appeal defendant contends he should be given credit for an additional period of time during which he was incarcerated in the Los Angeles County jail. The exact number of days' credit sought is not specifically stated but it is approximately 253 days.

### DISCUSSION

Defendant's position that a "hold" from San Bernardino made him "ineligible for bail" is simply meritless as to the time he spent in Los Angeles custody as a term of his probation for the offense committed in that jurisdiction. To this extent it is inaccurate that he was ineligible for bail because of a San Bernardino hold. ■ We agree with the decision in *People* v. *Macias* (1979) 93 Cal.App.3d 788 [156 Cal.Rptr. 104], that a defendant is not entitled to credit where his custody time is served in county jail as a condition of probation in another matter. *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], is further support for this conclusion and states that "a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (At pp. 155-156.) Furthermore, the record fails to establish the existence of a "hold." The result is the same whether or not there was a "hold."

■ Defendant not being entitled to credit for his Los Angeles probation time, we turn to consideration of his entitlement to credit in the San Bernardino case for Los Angeles presentence custody time. Defendant was certainly entitled to credit for this presentence time in the Los Angeles proceedings and we assume it was given. The question here is whether defendant is to be given dual credit.

One of our concerns in giving full and duplicative credits in a variety of different cases was expressed for us in *In re Hodges* (1979) 89 Cal. App.3d 221, at page 227 [152 Cal.Rptr. 394]. "Petitioner's interpreta-

tion of Penal Code section 2900.5, if adopted, would create the distinct possibility in similar future cases that, barring imposition of a consecutive sentence...the state's remedy would be exhausted before completion of trial and imposition of sentence on a subsequent conviction. In consequence, the seemingly infinite means to delay criminal prosecution, most of which are uniquely within the control of the defendant, would combine to create the very real prospect that some defendants would meet themselves, as it were, leaving the prison even as they arrived to commence their terms."

A brief hypothetical example will illustrate the point. Assume that defendant is convicted in San Bernardino County, sentenced to two years in prison, execution of sentence is stayed, and probation granted upon condition defendant serve one year in the county jail. Assume he serves that year and then goes to Los Angeles County where he commits a new crime, is arrested, and spends a year in the Los Angeles County jail pending disposition of that case. Then Los Angeles places defendant on probation upon condition he serves a year in county jail but, as it must, washes out that year with a year of credit for his presentence time in Los Angeles. If defendant's position herein was adopted, it would mean that although defendant had violated his San Bernardino probation, upon revocation of the probation once the Los Angeles matter had been decided, the San Bernardino court would be required to apply two years of presentence credit against the two-year prison sentence. In other words, defendant has essentially avoided the effect of violating his San Bernardino probationary grant. This is an unwarranted result.

What subdivision (b) of Penal Code section 2900.5 recites is this: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." Defendant believes he is entitled to credit under this section because his Los Angeles custody time was, he says, attributable to the same conduct in both jurisdictions—the Los Angeles burglary. Because the Los Angeles burglary was one of the four grounds upon which the San Bernardino probation was revoked, he believes he is entitled to the additional credit.

The conduct involved in the Los Angeles matter is not exclusively the conduct upon which defendant's probation was revoked herein. *Rojas*

again provides guidance. "Defendant's chief semantic argument is that because subdivision (b) of section 2900.5 does not read *'exclusively* attributable to proceedings' he should be granted the credit he seeks. He is in error. Although the word 'exclusively' does not appear, it is clearly provided that credit is to be given 'only where' custody is related to the 'same conduct for which the defendant has been convicted.'" (23 Cal.3d at p. 155.) *In re Hodges, supra,* 89 Cal.App.3d 221, phrases the consideration as follows: "petitioner would be entitled to presentence custody credit *if* but only if the conduct for which he is ultimately convicted was the cause of that confinement." (At p. 226.) *Rojas* also explains that "[s]ection 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (23 Cal.3d at p. 156.)

We think the question may be asked "What is the reason or cause of the defendant's confinement?" Why is the defendant confined? The answer where defendant is already under prison sentence while he awaits a trial in another matter is that defendant is confined because under prison sentence, not because he has been charged with a new offense. (*In re Rojas, supra,* 23 Cal.3d 152.) The answer where defendant is serving county jail time as a condition of probation is the same as where he is under prison sentence. (*People* v. *Macias, supra,* 93 Cal.App.3d 788.) If defendant is neither serving probation time nor serving a prison sentence, then the proceedings causing that custody must be determined and credit applied against the sentence in that proceeding. Several separate judicial proceedings may be pending against the defendant simultaneously creating a dual basis for custody and credit would then be appropriately applied against each of those matters unless consecutive sentences are imposed. (Pen. Code, § 2900.5, subd. (b).)

There has been extensive briefing and argument in this matter ranging through many cases and hypothetical circumstances. None of the cases are very helpful as they each involve some remarkable distinction from the situation before us. *In re Ewing* (1978) 78 Cal.App.3d 455 [144 Cal.Rptr. 229], *In re Shute* (1976) 58 Cal.App.3d 543 [130 Cal.Rptr. 270], and *In re Miller* (1974) 41 Cal.App.3d 1046 [116 Cal.Rptr. 624], are all somewhat factually comparable to this case and in each of those decisions credit was denied because custody in another jurisdiction on another matter was found to be unrelated to the offenses under review.

*In re Watson* (1977) 19 Cal.3d 646 [139 Cal.Rptr. 609, 566 P.2d 243], *People* v. *Washington* (1978) 80 Cal.App.3d 568 [145 Cal.Rptr. 654], *People* v. *Schuler* (1977) 76 Cal.App.3d 324 [142 Cal.Rptr. 798], *In re Jordan* (1975) 50 Cal.App.3d 155 [123 Cal.Rptr. 268], and *Cerda* v. *Superior Court* (1974) 42 Cal.App.3d 491 [116 Cal.Rptr. 896], are all cases wherein credit was given because custody in another matter was actually attributable to proceedings related to the conviction under review. *Watson* involved foreign custody time arising by defendant's resistance to extradiction on the charges leading to the sole sentence. *Washington* involved a single criminal act resulting in probation violation and new charges but with the new charges being later dismissed. *Jordan* involved federal custody for the same criminal act with the federal charges later being dismissed. *Schuler* involved custody for charges dismissed as part of a plea bargain, that plea bargain also creating the sentence upon which credit was given. In *Cerda* credit was simply given for custody awaiting the underlying sentence. Neither *Watson, Washington, Ewing, Schuler, Shute, Jordan, Cerda,* nor *Miller* gave a defendant dual credit under the circumstances of this case.

At first blush four relevant decisions are found in *In re Smith* (1978) 81 Cal.App.3d 325 [146 Cal.Rptr. 304], *In re Pollock* (1978) 80 Cal.App.3d 779 [145 Cal.Rptr. 833], *In re Bentley* (1974) 43 Cal. App.3d 988 [118 Cal.Rptr. 452], and *People* v. *Guthrie, supra,* 97 Cal. App.3d Supp. 53. *Pollock* and *Smith* are clearly overruled by *In re Rojas,* 23 Cal.3d 152. The key language of *Bentley* was disapproved by *Rojas. Guthrie* granted dual credit in reliance on *People* v. *Washington, supra,* 80 Cal.App.3d 568, but that case did not grant dual credit or discuss the matter. Furthermore, *Guthrie* did not discuss the possibly conflicting decision of *In re Ewing, supra,* [87 Cal.App.3d 455]. Ultimately none of these cases has proven dispositive one way or the other.

For the most part both sides of this case rely on the very same authorities which itself tells the tale of the usefulness of those cases in our disposition. Despite the barrage focused on this court, we think the solution lies in the simplicity of determining whether a dual basis for credit factually exists on the record before us. Penal Code section 2900.5 requires credit against the San Bernardino sentence only where the Los Angeles custody is attributable to San Bernardino proceedings. We are satisfied that the statute requires a relationship between the custody and the proceedings in which credit is sought. In this regard it is our view that if the custody has been caused in whole (the usual case) or

part (the dual basis situation) by the proceeding at issue, then the custody is attributable to the sentence resulting from the proceeding. Where, as here, there is no factual showing that defendant was held in custody on the proceedings at issue, then there is no entitlement to credit.

On the record before us we conclude defendant was not entitled to the credits he seeks.

Defendant also contends he was entitled to presentence good time/work time credits. While this case was pending the Supreme Court decided *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], which holds that a defendant is entitled to such presentence credits if he has earned them. If these credits are not administratively applied to defendant's sentence, he may file a motion with the trial court seeking such credits. No useful purpose would be served by returning this case at this time to the trial court as defendant may already have, or soon will, receive these pre-sentence good time/work time credits.

Judgment affirmed.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1980.